In the Matter of the Construction of an Indenture of Trust Made by MCALEXANDER D. RYAN. GUARANTY TRUST COMPANY OF NEW YORK et al., as Trustees, et al., Appellants; MCALEXANDER D. RYAN, Individually and as Trustee, Respondent.

First Department, May 18, 1954.

*Walter D. Fletcher* of counsel (*Andrew Y. Rogers* and *Standish F. Medina* with him on the brief; *Davis Polk Wardwell Sunderland & Kiendl*, attorneys), for trustees, appellants.

*Edward V. Loughlin,* as guardian ad litem, appellant in person.

*Francis J. Rogers* of counsel (*Paul Saurel* with him on the brief; *Morris & McVeigh,* attorneys), for respondent.

CALLAHAN, J.  This is an appeal from a final order holding that the settlor of an *inter vivos* trust was entitled to revoke the same without the consents of living persons who would be his distributees if he died as of the date of revocation. The question for decision is whether the trust instrument created remainders in such distributees or a reversion in the settlor.

The trust indenture was executed on May 27, 1939.  Consequently, its revocation is controlled by section 23 of the Personal Property Law prior to the 1951 amendment (L. 1951, ch. 180) relating to the effect of gifts in favor of a class described only as heirs or next of kin.

The instant trust was irrevocable by its terms.  The indenture provided that the settlor's inheritance of certain remainder interests from other trusts established by his grandfather was to be placed with the Guaranty Trust Company, T. Roland Berner, and the settlor as trustees to collect the income and pay the same to the settlor (described as the beneficiary) for life.  Upon the death of the beneficiary the corpus was to be paid to the persons designated by his will, and in default of such appointment to his lawful issue.  In default of issue the principal was to be paid to the beneficiary's mother and his wife, in equal shares, if he was survived by both, or to either of them, if survived by one and not the other.  The final clause as to distribution of principal provides that: " If neither his wife nor his mother shall survive him, to and among the persons to whom, and in such shares or proportions as said property would be distributable if the Beneficiary died intestate while domiciled in the State of New York and owning the Trust Estate."

The purposes of the trust are recited in the indenture as follows:  " WHEREAS McAlexander Donald Ryan wishes to provide for the future protection of himself and such lawful issue as may hereafter be born to him by transferring and assigning his remainder interests in said trusts created by the last Will and Testament of Thomas F. Ryan ".

The settlor himself testified at Special Term that he planned to put the principal in trust for his children and grandchildren, and that his purpose was to protect himself against extravagance and waste.

In the light of such testimony and the recital of purposes aforesaid, Special Term held that the trust might be revoked on the consents of the brothers and sisters of the settlor, though there were nephews and nieces who could not consent.

For the purpose of our decision we will assume that the testimony of the settlor was properly received, and that consideration must be given to the expressed intention of the settlor as set forth in the trust instrument. Nevertheless, we think that the ruling of Special Term was not correct, that the gifts to the distributees granted remainders, and that, therefore, the trust could not be revoked on the present consents.

We find nothing in the present document or the testimony to distinguish this case from the trusts construed in *Richardson* v. *Richardson* (298 N. Y. 135) and *Matter of Burchell* (299 N. Y. 351), where it was found that remainders and not reversions were created (see, also, *Hope* v. *United States Trust Co. of N. Y.,* 281 App. Div. 52).

The recital stating that the settlor wished to provide for the future protection of himself and his lawful issue does not show an intent to create a reversion in face of the expressed provision for ultimate disposition to his distributees. Of course, the latter gifts would take effect only if there were no issue, and no wife or mother. Therefore, the ultimate disposition to distributees would not in anywise interfere with the protection of the rights of the settlor or his issue. The meaning and effect of words of ultimate disposition to distributees could not be changed by a prior clause reciting a primary intent to protect the settlor and his issue any more than it could change the effect of the grants to a wife or his mother. Nor would an oral statement of intention adding little to the recital in the trust indenture itself, except, perhaps, an intention to protect grandchildren, override or alter the meaning of the dispositive terms of the trust in favor of distributees.

The settlor's scheme was one of complete disposition. It met squarely the tests enumerated in the *Richardson* case (*supra*): (1) there was a full and formal disposition of the principal of the trust property; (2) there was no reservation of a power to grant or assign an interest in the property during the lifetime of the settlor; (3) all control was surrendered,

except the right to make testamentary disposition and the right to appoint a substitute trustee; and (4) the settlor made no provision for the return of any part of the principal to himself during his lifetime.

In fact, the essential terms of this trust would seem identical with those in the *Richardson* case (*supra*), except for the inclusion of a gift to issue. This added provision makes no material difference (*Matter of Burchell, supra*).

The present trust is distinguishable from that in *Matter of Coyle* (280 App. Div 857), where the settlors directed investment in single premium life insurance policies solely for their own benefit and placed the proceeds in trust. There we found that the settlors reserved a degree of control revealing an intention to retain a reversion under the unusual circumstances of the case.

We are at a loss to follow the reasoning of the respondent that the expression of an intention to care for children or grandchildren disclosed an intent to create further trusts for their benefit and reserved a reversion in the settlor. The premise of this argument that a further trust could be created for grandchildren without conflict with the Rule against Perpetuities, if a reversion was created, is contradicted by the instrument itself, for no such further trusts nor any intention with respect thereto is mentioned therein.

The trust created was irrevocable and unalterable, and would not permit the inclusion of further trusts. A trust for unborn issue would run counter to the law against perpetuities. The birth of the first issue would establish a remainderman in being, and the trust would then be irrevocable in any event.

The authority of the cases cited herein constrains us to hold that the instant trust is irrevocable, since there are persons in being beneficially interested who cannot validly consent to its revocation.

The order appealed from should be reversed, with costs payable from the trust estate.

PECK, P. J., DORE, BREITEL and BERGAN, JJ., concur.

Order, so far as appealed from, unanimously reversed, with $20 costs and disbursements to the appellants payable out of the trust estate. Settle order on notice.